JACOB DARST

*v.*

WILLIAM G. BATES *et al.*

1. DEEDS—*time of execution—presumption.* The date of a deed, in the absence of other proof, will be presumed to be the true date of its execution, and this, notwithstanding the deed may not have been acknowledged until afterwards.

2. MORTGAGES—*change of form of the debt.* A junior mortgage was given to secure certain promissory notes, and the prior mortgagee released in favor of the junior mortgage : *Held,* that a subsequent change in the form of the debt by taking up the original notes and giving new notes instead, did not affect the lien of the junior mortgage ; the debt still remained, so far as the debtors, the creditors, and the holder of the prior mortgage were concerned.

3. SAME—*discharge of personal security.* And where, in such case, the original notes secured by the junior mortgage were also secured by the endorsement of a third person, the mere change of the old notes for new ones without an endorser, or the rendering of a judgment on the substituted notes, could not, as between the parties to the arrangement, release the premises from the mortgage.

4. SURETY—*of his rights before he is damnified.* A mere guarantor of a promissory note, which is also secured by a deed of trust, can not insist upon a foreclosure and the payment of the money to him, without having paid the debt or been in any way damnified. He has no right of recovery, either at law or in equity, until he has discharged the debt.

5. A mere surety, or person ultimately liable, can not sue and recover until he has paid the debt, or in some manner has been damnified.

6. PARTIES—*in chancery.* The holder of a prior mortgage filed a bill to foreclose. A junior mortgage had been given, but it became a prior lien by virtue of a release by the prior mortgagee in favor of the junior mortgage. A guarantor of the notes secured by the latter mortgage, filed a cross bill to foreclose that mortgage, without having paid the notes or been in any way damnified : *Held,* that the guarantor was not entitled to a foreclosure, and the holder of the notes secured by the second mortgage was a necessary party to such foreclosure.

7. REMOVAL *of a cause from a State court into a United States court.* Under the act of Congress of July 27, 1866, one of several defendants in a suit pending in a State court can not claim a removal of the suit into the

circuit court of the United States, except it be unnecessary for his co-defendants to be present.

8. In this case, the assignee of notes secured by a mortgage which was a junior lien, filed a bill to foreclose, making defendants thereto the mortgagors, the trustee under a deed of trust which was a prior lien, a guarantor of the notes secured by such deed of trust, and a tenant in possession under the mortgagors: *Held*, that such guarantor was not entitled to a removal of the cause into the Federal court, because his co-defendants were necessary parties, and the cause could not properly be determined without them.

9. Under the act of Congress of March 2, 1867, amendatory of the act of 1866, permitting causes pending in the State courts between citizens of the State in which the suits were brought and citizens of another State, on application of the latter, for a suit to be removed, for certain reasons, into a Federal court, it is not enough for the party seeking the removal to state that he is a *resident* of another State, as he may, notwithstanding that, be a *citizen* of this State.

10. And where the court below refused to grant the application for removal, if the record in the appellate court fails to show a justification of the sureties on the bond offered in the court below upon the application, the action of that court will be sustained.

APPEAL from the Circuit Court of Peoria county; the Hon. S. D. PUTERBAUGH, Judge, presiding.

On the 19th day of January, 1856, Warren Hall and Ashbell Hurlburt, being the owners of lots three, four and five, in block eight, in the city of Peoria, on which the Peoria House is situated, executed a mortgage thereon to Augustus O. Garrett, to secure the payment of a number of promissory notes, amounting in the aggregate to $30,000. While Garrett still held the notes and mortgage, he executed a release, postponing the lien of his mortgage to a trust deed which was executed on the same premises by the mortgagors on the 30th day of October, 1856, to Caleb Alden, to secure William G. Bates, who became a guarantor of certain notes, to the sum of $10,000, given upon a loan obtained by him for Hall and Hurlburt.

Subsequent to the execution of such release, Garrett assigned the notes held by him, and the mortgage given to secure them, to Jacob Darst.

A part of those notes had been paid, a balance of some $20,000 remaining unpaid. Darst filed his bill in the court below to foreclose his mortgage, making defendants thereto Hall and wife, Hurlburt and wife, Bates, Alden and Alfred Freeman, who was a tenant in possession under Hall.

Subsequently, Bates filed his bill to foreclose the deed of trust executed to Alden, making defendants thereto Hall and wife, Hurlburt and wife, Darst, Garrett and Freeman.

The holder of the notes upon which Bates became a guarantor, was not made a party to either suit.

The two suits were consolidated, and upon a hearing, the court below found that, although the deed of trust to Alden was the elder lien, yet, as Bates had not been damnified by reason of his said guaranty, he was not entitled to relief, and dismissed his bill; and as to Darst, a decree of foreclosure was entered.

Both complainants bring the cause to this court by appeal.

This shows the relations of the parties, and the various questions arising upon the record are presented in the opinion of the court.

Messrs. Cooper & Moss, for Darst, among other questions presented, insisted that Bates occupied the position of a mere guarantor of the notes secured by the deed of trust to Alden, and until he had paid the debt, or was in some manner damnified, he was not entitled to a foreclosure—citing *Lathrop* v. *Atwood*, 21 Conn. R. 117.

Messrs. Wead & Jack, also for Darst.

Messrs. Johnson & Hopkins, for Bates, contended that even if Bates could be regarded only as a mere guarantor, it was not essential to his right to foreclose the trust deed given

as an indemnity to him, that he should first be damnified, citing *Post* v. *Jackson*, 17 Johns. 239-479 ; *Lathrop* v. *Atwood*, 21 Conn. 117 ; *Chase* v. *Hinman*, 8 Wend. 452 ; *Rockfeller* v. *Donnelley*, 8 Cowen, 622 ; *McClure* v. *Edwards*, 3 Cowen, 313 ; *Jennings* v. *Norton*, 35 Maine, 308 ; *Carman* v. *Noble*, 9 Penn. 367 ; *Leber* v. *Kauffelt*, 5 W. &. S. 440 ; *Challover* v. *Walker*, 1 Burr. 574 ; *Wood* v. *Wade*, 2 Starkie, 167 ; *In re Isaac Negus*, 7 Wend. 469 ; *Churchill* v. *Hunt*, 3 Denio, 321 ; *Webb* v. *Pond*, 19 Wend. 421 ; *Thomas* v. *Allen*, 1 Hill, 145 ; *Dean* v. *Clark*, 14 Johns. 177 ; *Nesbit* v. *Smith*, 5 Bro. 578 ; *Cox* v. *Tyson*, 1 T. & R. 395 ; *Chamberlain* v. *Blue*, 6 Indiana, 491 ; *Champion* v. *Brown*, 6 Johns. Ch. 398 ; 1 Vernon 189 ; *Ketchum* v. *Joinerry*, 23 Conn. 123 ; *Bishop* v. *Day*, 13 Vermont, 87 ; *Batchelder* v. *Wendall*, 36 N. H. 205 ; *Hall* v. *Nash*, 10 Michigan, 303 ; *Colman* v. *Post*, id. 422 ; *Butler* v. *Ladue*, 12 Mich. 173 ; *Lowe* v. *Newbold*, 4 Jones' Eq. R. 212 ; *Daniels* v. *Young*, 3 Iredell, 520 ; *Kramer* v. *Bank of Steubenville*, 15 Ohio, 253 ; *Beckwith* v. *Manufac. Co.*, 14 Conn. 593 ; *Eastman* v. *Foster*, 3 Metc. 19 ; *Rice* v. *Dewey*, 13 Gray, 47 ; *Moses* v. *Murgatroyd*, 1 Johns. Ch. 118.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill in chancery, brought by appellant, in the Peoria Circuit Court, against appellees, to foreclose a mortgage dated January 19th, 1856, executed by Hall and Hurlburt to Augustus O. Garrett, to secure the payment of a number of promissory notes, amounting in the aggregate to the sum of $30,000. The last matured in 1866. It appears that the notes and mortgage were assigned by Garrett to appellant, who holds the notes remaining unpaid. Freeman was in possession under a lease from Hall, who had previously purchased the interest of Hurlburt. It appears that a portion of the notes were paid at maturity, but about $20,000 was unpaid at the rendition of the decree.

It further appears, that a portion of the premises embraced in the decree was sold to Luther Card before the mortgage was assigned by Garrett to appellant, but no question arises on that sale.   It appears that prior to Garrett's assignment, he executed an instrument in writing, in which it is recited that Hall and Hurlburt had executed a deed of trust on the property to Caleb Alden, to secure the payment of four promissory notes, executed by them, and amounting to $10,000.   He then released his prior lien on the premises under his mortgage, in favor of Alden's deed of trust.   This instrument was dated on the 13th of October, 1856, and was subsequently and during the same month duly recorded.   It is by virtue of this instrument that Alden and Bates claim to have a first lien on the premises in controversy.   But to avoid the effect of this lien, appellant contends that the release was obtained by fraud and false representations, and that all of the material facts set forth in the release were false.   It is contended that Hall and Hurlburt were not indebted to Bates at that time ; that a deed of trust or notes had not then been executed ; that there was no consideration paid to Garrett for the release ; that the deed of trust and notes were executed after the execution of the release.

It is also insisted that Bates did not loan any money to Hall and Hurlburt, nor did he advance any money upon the notes, but the notes were endorsed by Peter Sweat, or countersigned by him, and taken to a broker's office in New York or New England, and there sold at a discount; that these notes were afterwards replaced by others, and this process of renewal was repeated until several sets of notes were given ; and appellant claims that Bates took other security on the notes, which he thereby released, and that Bates has not paid the notes, but they are still outstanding ; that Bates released the portion of the premises sold to Card, and received $2,500 therefor, which should be credited on Bates' claim ; that Freeman paid rent to Bates ; that Hurlburt had sold his interest to Hall, and has no further claim on the premises.

Bates contends that the release was not procured by fraud, and insists the trust deed had been executed and that the sum secured by the trust deed is due and owing to him. It appears that Hall and Hurlburt admit the debt to Bates; that they had confessed a judgment for the balance due on the notes, in March, 1860, and Bates was receiving and applying the rents and profits on the judgment when appellant filed his bill.

The record discloses the fact that Hall and Hurlburt were desirous of effecting the loan of $10,000, and applied to Bates to accommodate them, and he undertook to raise the money for them; and to enable him to do so the deed of trust and notes were made, and Garrett's release procured, and also Sweat's endorsement of the notes. These being sent to him, he endorsed the notes and procured their discount in the West-field Bank in Massachusetts, and with the proceeds took up his own note, which he had given to raise the money for them while these papers were being prepared and forwarded to him, and out of the amount thus received he deducted $400 they had agreed to pay him for procuring the loan; also, a small account which they owed him. As these notes fell due there were a number of renewals, by the substitution of other notes, and Sweat endorsed several times for Hall and Hurlburt for this purpose, but he subsequently declined to endorse further. It nowhere appears that Bates has taken up or paid the notes to the bank, or that he is still in anywise liable for their payment; nor is the bank, or any one supposed to be the holder, made a party to this proceeding by the bill or cross-bill.

The first question presented for consideration is, whether the release was obtained from Garrett by false and fraudulent representations. Even if Hall and Hurlburt, to induce the execution of the release, did promise to give Garrett other security, there is no evidence to charge Bates with a knowledge of the fact. If they acted in bad faith with Garrett, Bates can not be chargeable with the fraud unless he had notice or knowledge of such facts as to put him on inquiry, before he received and acted upon the release, as a valid and binding

instrument.   And whether the notes and deed of trust were executed before Garrett gave the release, can not matter, as Bates acted upon them, so far as we can see, without being apprised of the fact.   But even if he knew the fact, we do not see how Garrett can object, as he is not prejudiced thereby. His rights were not altered by the formal execution of the instruments after he gave the release.   It was, at most, but doing what he virtually had consented might be done.

But the trust deed bears date on the 13th day of October, 1856, and the notes are by it described as bearing even date therewith; and in the absence of proof showing that it was executed on a different day, the date specified will be presumed to be the true date of its execution.   It is true that it was not acknowledged until the 30th of that month, but that does not prove that it had not been executed before that time. And when it appears that the deed of trust and notes did not come to the hands of Bates until about the 3d or 4th of the next November, we may readily suppose that although previously executed, it would only be acknowledged at the time the makers desired to forward it to Bates.   We do not regard this objection as well taken; and we are clearly of opinion that this trust deed, by operation of the release executed by Garrett, became and is a prior lien on the premises in dispute. Appellant having taken the assignment with record notice of its existence, can only claim subject to its provisions.

It is, however, urged that the notes described in the trust deed were discharged and taken up by the makers.   In taking them up, however, other notes were substituted, and it is manifest the debt for which the notes were given, and to secure which the trust was created, was not thereby paid or discharged.   The debt still remained, but the form of the notes had changed, but nothing more, so far as the debtors, the creditors, and the holder of the Garrett mortgage were concerned. Although Sweat and Bates may have been released as endorsers, still Hall and Hurlburt remained liable for the same debt, as it had not been paid or they in any manner discharged;

and equity only looks to the substance, and not to mere form. The deed of trust, then, having been given to secure the debt, and it still, in substance, remaining unpaid, the trust will be kept alive to secure its payment. The mere change of the old notes for new ones, without endorsers, or the rendition of judgment on the substituted notes, could not, as between the parties to the arrangement, release the premises from the deed of trust. Until the debt is paid, that will stand, as to the parties, unless they do some act for the purpose of releasing the premises from the operation of the trust.

But it nowhere appears that Bates has paid any portion of the debt, or that he is the equitable holder of the judgment. He does not even claim to know where the notes last given are, or who is the holder of the same. He says that he has never paid them, and has never been discharged as guarantor of the same. If Bates is only a guarantor, as he and Alden state, we are at a loss to perceive why he should be permitted to receive or retain the proceeds of the trust fund. He surely can have no right of recovery, either in law or equity, until he shall have paid or discharged the debt for which the notes were given. He does not even appear to be the agent of the holder of the notes, but, on the contrary, says he does not know who he is. A mere security, or person ultimately liable, can not sue and recover until he has paid the debt, or in some manner has been damnified.

While this property is bound for the debt, Bates has no right, simply because he guaranteed its payment, to insist upon a foreclosure and a payment of the money to him. Nor does the fact that Hall and Hurlburt confessed a judgment for the amount remaining unpaid, simply to indemnify him against loss, place him in any better position. To be able to foreclose, he should have paid the debt. The holder of the notes, whoever he may be, is therefore a necessary party. Until he is before the court, the equities of all the parties can not be fully adjusted. As the record now stands, these two suits, one by appellant and the other by Bates, and each seeking a foreclosure

have been consolidated. Bates' bill having been properly dismissed, then appellant is entitled to a decree for the sale of the property, subject to the lien of the trust deed to Alden. Had the holder of the notes been made a party, then the property should be sold, and the amount due on each of the debts should be ascertained and paid in the order in which they are liens. Or, if the holder of these notes was a party, and the sum due appellant was ascertained, he could redeem and subject the property to sale for his as well as that debt.

Inasmuch as Bates is not the holder of the notes secured by the trust deed to Alden, and has not shown that he is the agent of the holder, he has no right to receive the rents in the receiver's hands. Merely because he claims to have become liable on a guaranty for their payment, gives him no right to control the debtor's property or the rents and issues thereof. Were they paid to him, there is no assurance that they would ever be paid to the creditor, as he does not even know who he is. If the holder had been a party to this proceeding, then, as he holds the prior lien on the property, as the rents issue from it he would be entitled to receive them, and the court would have so decreed.

The court having appointed a receiver, and the trust fund and the profits arising therefrom being under the control of the court, the funds in the hands of the receiver should be disposed of by the final decree. When that is made, if the holder of the first lien is not a party to the record, then this fund should be decreed to appellant. The fact that Bates took an assignment of the lease as collateral security for a debt, which he did not hold or control, gives him no right in equity to receive the money ; and if he desires to have it so applied as to exonerate him from liability on the notes, which he says he has guaranteed, he should have brought the holder of the notes before the court, that it might be decreed to him.

It is urged that the court below erred in refusing to remove the cause to the United States Circuit Court for the Northern

448          DARST *v.* BATES *et al.*          [Sept. T.,

Opinion of the Court.

District of Illinois. The first application seems to have been made under the act of the 27th of July, 1866, (sess. laws Cong. 316). That act declares that if in any suit already commenced, or that shall be commenced, in any State court, against an alien or a citizen of another State than that in which the suit is brought, the matter in controversy shall exceed $500, exclusive of costs, and the suit has been brought for the purpose of restraining or enjoining such alien or citizen of another State, and the suit is one in which there can be a final determination of the controversy, as to him, without the presence of the other defendants, then the alien defendant, or the defendant who is a resident of another State, may, at any time before the trial or final hearing of the cause, file a petition for the removal of the cause as against him into the next circuit court of the United States to be held in the district where the suit is pending. The remainder of the act relates to the manner in which the removal shall be had.

It is apparent that Bates was not within the provisions of this act of congress. He could only claim a removal when it is unnecessary for his co-defendants to be present. It is manifest that the case could not be determined alone, as to him, had it been removed to the United States Circuit Court. The other defendants, having rights and interests to be protected, were necessary parties, and the act has provided against splitting up causes of action and trying them in fragments—a portion of the parties being in one jurisdiction and the others in a different one. The court below, therefore, decided correctly in refusing to remove the suit brought by appellant to the Federal court, or to remove it so far as it concerned Bates.

He and Alden, however, filed a petition and affidavit in the case brought by himself after the cause was at issue, asking its removal, under the act of congress of March 2d, 1867 (sess. laws 196). That act declares that it is amendatory of the act of July, 1866, and that where a suit is pending, or may be thereafter brought in a State court, and the sum in contro-

versy exceeds $500, exclusive of costs, between a citizen of the State in which the suit is brought and a citizen of another State, the latter, whether plaintiff or defendant, if he shall make and file in such State court an affidavit stating that he has reason to and does believe that, from prejudice or local influence, he will not be able to obtain justice in such State court, may at any time before the final hearing of the suit, file a petition in such State court for the removal of the suit into the next circuit court of the United States to be held in the district where the suit is pending. The remainder of this act relates to the manner in which the petitioner shall proceed, and the order of removal that shall be made by the State court.

This is amendatory of the former act, and changes it by permitting either a plaintiff or defendant to apply for and obtain the removal, when from prejudice or local influence he fears he will be unable to obtain justice in the court in which the suit is pending. This seems to be the extent of the amendment, but not to have changed its other provisions.

But, be the construction as it may, Bates and Alden have not brought themselves within the provisions of either act. In their petition and affidavit they do not state that they are citizens of Massachusetts; they only say they are residents of that State. That may be true, and still they might be citizens of Illinois. They should, by their own showing, bring themselves clearly within the requirements of the law, to avail of its provisions. All know that there is a broad distinction between a citizen and a resident. They form distinct classes in the State, and the latter class does not enjoy all the privileges which appertain to the former.

Again, in this case we fail to find that there was any justification of the sureties offered on the bonds which were offered in the court below on the application for the removal. The court below was not required to take judicial notice of the sufficiency of the sureties, as to solvency, responsibility, residence, &c. But if such was the duty of the court, we would presume

29—51ST ILL.

that, in the exercise of that duty, he knew the pecuniary condition of the bail and regarded them as insufficient. In construing an act of this character, the policy and constitutionality of which may be doubtful, and where its operation can only be attended with delay and increased expense in the administration of justice, its scope should not be enlarged by implication and a latitudinarian construction. Congress could not have intended to prohibit non-residents of a State from being sued or from suing in a State court, but if the construction contended for should be given to these acts, such would well nigh be its operation. If there is fear of local prejudice or influence, the party, like citizens of the State, may have a change of venue to another county or circuit. It can not be presumed, simply because a person happens to be a resident of one State, that he can not get justice in the courts of another where he is a non-resident. The experience of the past does not warrant such a conclusion, and the Federal legislature could not have acted upon that presumption in adopting these enactments.

For the want of proper parties, the decree of the court below must be reversed and the cause remanded.

*Decree reversed.*

Upon an application by the appellant, Darst, for a rehearing of this cause, at the September term, 1870, the court delivered the following additional opinion:

Per CURIAM: On an application for a rehearing we are asked to vacate the decree of this court rendered on the former trial, and to modify it in the directions to the circuit judge. We deem it unnecessary to vacate that decree, but deem it proper to render the directions more specific.

When the case is brought to trial in the court below, if the holder of the notes has made himself a party to the bill filed by Bates, then it would be proper for the court to render a decree for the sale of the property, and that the holder of the

notes given to Bates be first paid, then the payment of the Garrett mortgage, or so much as remains unpaid, and the balance, if any shall remain, to be paid to the holder of the equity of redemption. If, however, the holder of the notes should not come in and make himself a party complainant to Bates' bill then it should be dismissed, and the court should render a decree for the sale of the property, subject to the deed of trust executed to Alden, and that so much of the proceeds of that sale as may be necessary be applied to pay the balance due on the Garrett mortgage, and the remainder, if any, be paid to the holder of the equity of redemption.