## PALMER V. KELLOGG

### *v.*

## ALEXANDER P. MOORE.

*Filed at Ottawa February 3, 1881.*

1. ALLEGATIONS AND PROOFS — *must correspond.* The allegations in a bill in chancery and the proofs must agree, or no recovery can be had. If the complainant fails to prove his case as made by the bill, he will not be entitled to recover, although the facts actually proved by him would have entitled him to relief had his bill been framed upon a different theory, and a party can not avail himself of any fact established by the proofs which has not been alleged in his bill.

2. SAME—*bill for partnership account—proof must sustain every essential allegation.* Where a bill proceeds upon the theory that there is a general unsettled partnership account, and that a true and fair adjustment of the same will show an indebtedness from the defendant partner to two other members of the firm, and that the right to such indebtedness has passed to the complain-

ant under sale in bankruptcy proceedings against the other two partners, and praying for an account, the failure to establish any one of these facts which the theory of the bill assumes to exist, will be fatal to the whole case, as they are severally indispensable, and as a whole constitute the very foundation upon which the right of recovery rests.

3. REMEDY AT LAW—*after settlement of partnership account.* Where, on the settlement of partnership accounts and the sale of the entire interest of the outgoing partner, including notes and accounts, certain notes and claims were selected from the others as a "guarantee account," to cover bad debts of the old firm, and the outgoing partner expressly promised to pay his proportionate share of any deficit in such "guarantee account," it was *held,* that in case of any deficit the remaining partners or their assignees, after a proper demand, would have a complete remedy at law upon the promise.

4. BILL FOR AN ACCOUNT—*prior settlement a bar.* Where, prior to a bill for the adjustment of a partnership account filed by a purchaser of the interest of two of the firm, it appeared that there had been a final accounting and settlement between the partners, and that the defendant partner then made a complete sale and transfer to his other partners of his entire interest in the partnership effects and business, including the notes and accounts: *Held,* that the bill could not be maintained and was properly dismissed, in the absence of any mistake or error in the settlement being shown.

5. PRACTICE—*waiver of forms of law.* While parties to a suit may waive their rights, it is very questionable whether they may, by mere private agreement, dispense with the ordinary forms of procedure and adopt others in their stead, and require courts to consider cases thus presented for determination, as, that the court on a bill in chancery may pass upon evidence at variance with the frame and theory of the bill, and grant such relief as the proofs show the complainant might have been entitled to under a proper state of pleading.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

This writ of error is prosecuted to reverse a judgment of the Appellate Court affirming a decree of the Superior Court of Cook county in a chancery proceeding, wherein plaintiff in error was complainant and defendant in error was defendant.

The bill charges, that February 1, 1869, Samuel Bliss, Alexander P. Moore and William B. Topliff entered into co-

partnership in the wholesale grocery business in Chicago; that
the business was carried on under the firm name of Bliss,
Moore & Co.; that each partner put in his agreed share of
the capital, and from time to time drew out certain amounts
for his individual purposes, and that the partners were to
share in the profits and losses in proportion to the amounts
standing to their credit, respectively, as ascertained for each
year; that said partnership business was continued until De-
cember 31, 1874, when the partnership was dissolved by
mutual consent; that during the continuance of the partner-
ship a large amount of goods was sold on credit, and debts
were incurred, and the business remains unsettled; that no
settlement has been made between the partners, and that since
the dissolution Bliss and Topliff have repeatedly applied to
Moore to come to a final settlement and adjustment, which
Moore has declined and still refuses to do; that on the 19th
of February, 1878, said Bliss and Topliff were adjudged
bankrupts, on their own petition, in the District Court of the
United States for the Northern District of Illinois, and
thereafter such proceedings were had that on or about the
7th day of March, 1878, all the assets of Bliss and Top-
liff, as partners, under the firm name of Samuel Bliss & Co.,
including their interest in the unsettled accounts and claims
of the former firm of Bliss, Moore & Co., and a claim against
Moore for his proportion of certain debts, etc., paid by Bliss
and Topliff upon and on account of the liabilities of the old
firm of Bliss, Moore & Co., were sold to and bought by this
complainant, and were, by order of court, entered in said
bankruptcy proceedings, assigned and conveyed to complain-
ant, who is now the legal owner thereof; that, upon a just
and true settlement of all the accounts of the old firm, it
would appear that a large balance was due from Moore to
Bliss and Topliff, in respect of said co-partnership of Bliss,
Moore & Co., at the date of the filing of their said petition in
bankruptcy, which balance was assigned to the complainant
by said assignment, and is now due and payable to him.

The bill prays for the usual process of summons, and requires defendant to answer, but not on oath, and prays that an account may be taken, that the partnership dealings and transactions may be adjusted, and the rights of the parties respectively ascertained, and that the defendant may be directed to pay to the complainant what, if anything, shall, upon such account, appear to have been due to said Bliss and Topliff from him, the said Bliss and Topliff being ready and willing and always offering to pay to the defendant what, if anything, shall appear to be due to the defendant from them, and that the complainant may have such other or further relief, etc.

. The answer admits the partnership, but says defendant can not recollect the exact date when it was formed, as he does not have control of the books or papers of the late firm, and denies that they were to share in the profits and losses, as stated in the bill; admits that the firm was dissolved about the time alleged in the bill, but denies that the partnership remains unsettled, and alleges that on or about January 1, 1875, the defendant and Bliss and Topliff came to a settlement and adjustment of all their partnership affairs, and stated an account between themselves, and that Bliss and Topliff, for a price agreed upon, bought out all the interest of the defendant in said firm, and agreed and assumed to pay all the debts of said firm, and thereupon released the defendant from all liability and obligation to both or either of them on account of any transaction of any description of said firm arising prior to said time, and that since that time he has been under no obligation to Bliss and Topliff, or either of them, on account of any matter pertaining to said firm of Bliss, Moore & Co., and that Bliss and Topliff have not, nor has either of them had, since said settlement, any obligation or demand against the defendant; admits that Bliss and Topliff have been adjudicated bankrupts, as alleged in the bill, but denies that the interest of the firm of Samuel Bliss & Co. in the unsettled accounts and claims of the firm of Bliss, Moore & Co., or that

a claim of said Bliss and Topliff against the defendant, was
sold to and bought by the complainant, as alleged in the bill,
and denies that any such claim, or any claim against the de-
fendant, was, by order of said bankrupt court, assigned and
conveyed to complainant, and alleges that no claim of Samuel
Bliss & Co., or of said Bliss and Topliff, against the defend-
ant, was sold, assigned or transferred to complainant, as
alleged.

Upon the hearing the Superior Court rendered a decree
dismissing the bill, which decree, as already stated, was ap-
proved by the Appellate Court.

Messrs. HOLMES, RICH & NOBLE, for the plaintiff in error.

Messrs. ROSENTHAL & PENCE, for the defendant in error.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

It will be perceived that the bill in this case is, in form,
scope and purpose, an ordinary bill for an account between
partners.

The bill proceeds upon the theory that there is a general
unsettled account between the members of the late firm of
Bliss, Moore & Co. as partners, and that a true and fair adjust-
ment of the same will show an indebtedness from Moore to
Bliss and Topliff, as partners under the style of Samuel Bliss
& Co., and that the right to this indebtedness passed to Kel-
logg, the complainant, under the bankruptcy proceedings.
If the complainant has failed to establish any one of these
facts which the theory of the bill assumes to exist, the whole
case must fail, for they are severally indispensable, and as a
whole, constitute the very foundation upon which his right
of recovery rests, unless there is some element in the case
that relieves the complainant from establishing by proof the
case made by the bill. They are clearly and distinctly charged
in the bill, and are with equal clearness and distinctness de-
nied by the answer, and the important inquiry is, have they

been sufficiently established by the proofs, or has their proof, for any reason, been dispensed with.

There is no principle connected with the administration of the law more elementary in its character, or of more constant and universal application, than the well recognized doctrine that the allegations and proofs must agree. The rule is applicable to all pleadings, and is as fully recognized and as rigidly enforced in courts of equity as in courts of law. If parties were permitted to recover by proof of a state of facts variant from that set forth in their pleadings, all pleadings, so far from subserving any wise or good purpose, would be but a snare and delusion: they would constantly be subverted to the worst of purposes in order to gain an unrighteous advantage.

The chief object of written pleadings is to distinctly inform the adverse party of thé facts relied on for a recovery or a defence, so that he may admit or deny them, or question their legal sufficiency by a demurrer, exceptions, or otherwise, as he may be advised by his counsel, and also to inform the court of the real points of difference between the parties to the suit, so as to enable it to intelligently pass upon and determine their respective rights. But if parties are not held bound by their pleadings, it is clear the very object of them would not only be defeated, but they would be used by unscrupulous litigants for the express purpose of misleading their adversary, and neither the court nor the parties could ever know to a certainty the points of difference till all the evidence was in, and hence no one could intelligently prepare for trial. In conformity, therefore, with the above rule, it has often been held by this court, that if a complainant fails to prove the case made by his bill he will not be entitled to recover, although the facts actually proved by him would have entitled him to relief had his bill been framed upon a different theory. *Moffett* v. *Clements*, 1 Scam. 384; *White* v. *Morrison*, 11 Ill. 361; *Rowan* v. *Bowles*, 21 id. 17; *Tuck* v. *Downing*, 76 id. 71; *Taylor* v. *Merrill*, 55 id. 52; *Tiernan* v. *Granger*, 65 id. 351.

Again, it has often been held, in conformity with the same principle, that a party can not avail himself of any fact established by the proofs, which has not been alleged in his bill. *McKay* v. *Bissett et al.* 5 Gilm. 499.

So far as the proofs are concerned, this case rests mainly upon the testimony of Bliss himself and the correspondence between him and Moore a short time before the dissolution of the firm about the first of January, 1875. The testimony of Bliss is any thing but satisfactory. Although he undertakes several times, through the course of a somewhat extended examination, to state the agreement at the time of dissolution, yet each of his statements, both in form of expression and in the facts detailed, differs from each of the others so that his testimony as a whole has to be gathered from these several, partial, and to some extent, variant statements.

This, in connection with the fact that his answers to interrogatories are sometimes, upon material matters, not sufficiently direct and pointed, leaves his testimony, as a whole, in some degree confused and unsatisfactory; yet, when considered in connection with the correspondence which led to the agreement by which the partnership was dissolved, there can be but little doubt as to what the real agreement was. Bliss, when interrogated with reference to this correspondence, says: " There were letters passing backwards and forwards as preliminary to a settlement—to edge the way to come in and have a final settlement in the store; the letters were preliminary— kind of reaching out to get an agreement as to what we should do when we came together."

Now, if the object of this correspondence was attained,— that is, if an agreement was reached as to what should be done when the parties came together, and this is not denied,—it will throw much light upon Bliss' denial that any final agreement was reached through the correspondence, and will tend to harmonize some of his statements which are, apparently, to some extent, conflicting. Bliss admits there was a partial settlement of their affairs on the 1st of January, 1875; that

an agreement was then entered into by which the partnership was dissolved, and he and Topliff, under the style of Samuel Bliss & Co. became the purchasers of the stock of goods, signs and fixtures, at invoice costs, except where articles were positively damaged, in which case they were taken at their actual value. He claims, however, there was no actual sale of the debts due the firm, but admits they were estimated at a *price* so that he and Topliff could advance money on them, and that this estimated price was paid by them to Moore in their own notes, which were indorsed by him in blank and subsequently paid by them with their own funds, and that they then took exclusive possession of the notes and accounts, together with everything else pertaining to the business of the firm. And it is further admitted by them that a part of these assets were applied by them in paying the debts of Bliss, Moore & Co., and a part were used in the business of Samuel Bliss & Co.

Bliss further testifies that it was the understanding between the parties that Samuel Bliss & Co. were to collect the accounts belonging to the old firm, and if the proceeds, when collected, fell short of what they were estimated at, Moore was to pay to them his proportion of the deficit; and on the other hand, if they amounted to more, they were to pay to him his proportion of the excess.

It will thus be perceived, that the main controversy in this case, so far as the terms of the dissolution are concerned, turns upon whether there was an out and out sale by Moore, to Bliss and Topliff, of his interest in the notes and accounts. Upon this question we regard the previous correspondence between them of vital importance, and from a careful perusal of it, it is difficult to resist the conclusion, that it was the purpose of the latter to buy, and the former to sell, his entire interest in the concern, including the notes and accounts. Throughout this correspondence both of the parties speak of buying or selling, as the case may be, of Moore's interest, without any reservation or exception with respect to the notes and

accounts, or anything else, and whenever either of them goes into the details of the subject matter of the sale, the notes and accounts are specifically mentioned. For instance, Bliss, in his letter of December the 2d, uses this language:

" By the business and good will of the concern, I mean the stock at just what it cost, the good with the bad, and the accounts at a just and fair valuation, and make no charge for collecting the same. * * * I desire, above all things, to *separate our business interest* amicably," etc.

In a subsequent letter, when speaking of an offer made to Moore, he says: " I still think our offer to you is equal to an offer of five thousand dollars to the present firm. The money is better than *our goods and accounts,* and what we offer to take them at, by this amount." * * * Further on in this letter, which was written on the 14th of December, Bliss makes a final proposition to Moore. He says: " We will pay you, in addition to what we have before offered you, the sum of $1500 for your interest," etc.

Moore, in his letter of the 17th, says, in reply: " I accept your offer of $1500 in addition to my actual interest in the stock and accounts, and notes of our firm, upon the following conditions, viz: First, provided we can agree upon the amount to be locked up in the guarantee account; and second, that the notes you give me are endorsed by Mr. Nichols, of Danbury. Also the stock fixtures and signs to be taken at cost."

It is to be observed, that there is no controversy with respect to the two conditions upon which Moore accepted the final proposition of Bliss and Topliff, and nothing to show that the latter ever withdrew or receded from their proposition thus accepted, because of the conditions annexed to the acceptance.

Besides, when the parties met to formally carry into effect the agreement already reached through the correspondence, the amount to be taken out of the notes and accounts and to be placed to the guarantee account before making any general

estimate of Moore's interest, was satisfactorily arranged, and the notes given him in payment for his interest having been accepted by Moore, it was wholly unimportant whether Nichols' name was on them or not. So, these conditions being out of the way, Moore's acceptance of Bliss and Topliff's final proposition became, in effect, an absolute acceptance; and that it was acted upon by the parties can not reasonably be doubted, from the fact that Bliss admits, that by the agreement finally consummated, they were to pay Moore the $1500 specified in their last proposition, which was accepted by Moore in the manner above stated.

Upon the whole, we are of opinion that the weight of evidence shows that there was a final accounting and settlement between the parties about the first of January, 1875, upon a basis which had already been agreed upon through their correspondence, and that at that time Moore made a complete sale and transfer to Bliss and Topliff of his entire interest in the partnership effects and business, including the notes and accounts.

Even adopting appellant's theory of the facts, there must, of necessity, have been an accounting and settlement of all liabilities to, and demands against, the partnership, on the part of the members of the firm, together with an estimate of the assets and liabilities of the firm,—otherwise the interest of Moore could not have been approximated, as Bliss swears it was.

Admitting, then, that at the time of this final agreement, which must, of necessity, as just stated, have fully adjusted the rights and interests of all parties concerned—and this is the most favorable view for the plaintiff in error the evidence will warrant—it was agreed and understood between the parties, that if the notes and accounts taken out of the general fund, for the purposes of the division, and placed to the "guarantee account," should prove insufficient to cover all losses in the shape of bad debts, Moore should make good to Bliss and Topliff his proportionate share of the deficit; and on

the other hand, if they should be more than enough to cover such losses, Bliss and Topliff should pay to him his proportionate share of the excess, this state of facts wholly fails to establish the case made by the bill, or otherwise give the complainant any standing in a court of equity. Defendant in error having once fully accounted—it not being claimed that any mistake occurred in the settlement—he is not subject to another accounting. 1 Story's Eq. Juris. sec. 468, *et seq.;* Parsons on Part. 511; Wait's Ac. and Def. 187–188.

Indeed, it is not seriously contended that the proofs do sustain the bill,—but it is claimed, that by reason of a certain agreement, entered into by counsel while the cause was pending in the Superior Court, plaintiff in error is entitled to a decree if the proofs show that, upon a properly framed bill, he would be entitled to relief, whether they establish the present bill or not. The agreement in question was to the effect, that any proper evidence in the controversy between the parties, might be introduced on either side, on the trial, under the pleadings as they stood, without amendment or further replication. And the stipulation provides, that the matter therein stipulated shall have the same effect on the appeal as it would have had if incorporated into the record from the Superior Court.

It may admit of grave doubt whether, under an agreement of this kind, a party may substantially abandon his bill altogether and recover upon an independent theory. The law has wisely provided certain modes of procedure, and while parties to a suit may waive their rights, it is very questionable whether they may, by mere private agreement, dispense with the ordinary forms of procedure and adopt others in their stead, and require courts to consider cases thus presented for determination. But, in the view we take of the case before us, it is unnecessary to determine to what extent, if at all, parties may, by agreement, dispense with the forms of procedure, or whether the construction placed upon it is the correct one; or whether anything more was intended by

it than that either party might introduce any evidence within the general scope of the bill or answer without formal amendments; or whether, notwithstanding the agreement, the court must look to the pleadings to determine whether the cause of action or defence has been established.

Conceding the position of plaintiff in error to be correct, and giving him the full benefit of every fact proved, still the evidence fails to show that the defendant in error is liable to be called upon in a court of equity to further account to complainant or any one else, on account of said copartnership.

There are several good reasons why he is not liable: First, he has already fully accounted. Second, he has nothing that he can account for, because it clearly appears, upon the face of the bill itself, that everything pertaining to the partnership went into the exclusive possession and control of Bliss and Topliff, through whom plaintiff in error claims. What could he account for?

It is not proved that he is indebted in any amount to any one, on account of the partnership, except for a balance of the firm indebtedness still due to some Boston creditors, which, under the partnership settlement, should have been paid by Bliss and Topliff. Such a conclusion can only be reached by mere inference, and not from any direct statement to that effect. Third, if defendant in error is liable, on his express promise to pay his proportionate share of any deficit in the "guarantee account" to cover bad debts, it is a matter easily determined, or at least should be, from the books and papers in the exclusive possession of Bliss and Topliff, or their assigns, and, after a proper demand for the amount, no doubt whoever is entitled to it would have a complete remedy at law.

In any view we are able to take of this case we are clearly of opinion that the decree of the Superior Court was right, and was therefore properly affirmed by the Appellate Court.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*