ALEXANDER P. MOORE

*v.*

WILLIAM B. TOPLIFF *et al.*

*Filed at Ottawa May 10, 1883—Rehearing denied September Term, 1883.*

1. SURETY—*when that relation exists.* Three partners, A, B and C, executed their firm notes to C, who indorsed the same, and the firm paid interest thereon until A withdrew from the firm, B and C taking all the assets and assuming all liabilities. It was *held,* that, as between themselves, upon this state of facts B and C became principal debtors, and A surety, upon the notes.

2. SAME—*right to subrogation.* It is a settled principle in equity, that a surety, upon paying the debt of the principal, is entitled to be substituted in the place of the creditor as to all securities held by the latter, and have the same benefit that he would have therein.

3. SAME—*whether a mortgage security to the creditor is extinguished, so as to defeat the surety's right to subrogation—discharge of principals, in bankruptcy.* Notes were given by a partnership firm, composed of A, B and C, and indorsed to third parties, which notes were secured by a mortgage to the creditors, from C, on real estate. A afterward sold out all his interest in the firm to B and C, who assumed all the firm indebtedness, and formed a new partnership, the new firm paying interest on the notes until their bankruptcy, in which proceeding in bankruptcy the creditors proved their debts, and received forty-two per cent as a composition, in full discharge of the personal liability of B and C: *Held,* that as A was still personally liable on the notes as surety for B and C, the mortgage was not extinguished, and that A's existing equity, as surety, to have the mortgage security surrendered by the creditors to him upon his payment of the balance of the debt, was unaffected by the bankruptcy discharge.

4. SAME—*rights of the surety, before paying the debt, to secure indemnity.* A surety, after the debt has become due, may, without having made payment himself, come into a court of equity and compel the principal to pay the debt, making the creditor a party, that he may be at hand to receive the money. The surety stands in the position of an equitable assignee, and may use the remedies of the creditor, at his own risk and cost.

5. Where a judgment was recovered against a surety alone, and its collection pressed, it was *held,* that he had a right, before paying the debt, to file his bill in equity against the creditors and his principal, to be substituted to a mortgage security given by the principal to the creditors, in order to guard against injury from a release or transfer of the security, and to save circuity of action and the multiplying of suits.

16—107 ILL.

6.  CHANCERY—*may grant relief dependent upon the performance of some duty in the future.*  In the case of mutual rights and duties, it is common for courts of chancery, by their decrees, to prescribe the rights of parties upon the performance of some duty in the future,—as, in bills for redemption, or for specific performance, in which the complainant must offer to do equity, and pay what may be found proper to be paid; and this rule applies between a surety and creditor.  The right of the creditor to his money, and the right of the surety to the securities held by the creditor, are reciprocal and concurrent.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

On October 26, 1871, the firm of Bliss, Moore & Co., composed of Samuel Bliss, Alexander P. Moore and William B. Topliff, executed its three promissory notes of that date, two for $1650 each, and one for $1700, payable to the order of William B. Topliff, falling due five years after the date, and bearing interest at the rate of ten per cent per annum. Topliff sold, indorsed and delivered the notes, one to each of his sisters, Sarah J. Houghton, Eliza M. Stanwood and Mary M. Topliff, the one delivered to Sarah J. Houghton being for $1700.  At the same time that Topliff delivered these notes he executed and delivered to Sarah J. Houghton a mortgage or trust deed to secure the note held by her, and the one held by Eliza M. Stanwood, of certain real estate situate in Chicago, which mortgage was filed for record November 18, 1871.  Moore, Bliss and Topliff continued in partnership under the firm name of Bliss, Moore & Co. until about January 1, 1875, when they dissolved partnership, Moore going out, and Bliss and Topliff continuing the business, under the firm name of Samuel Bliss & Co.  The firm of Samuel Bliss & Co. bought out the interest of Moore in all the assets of the firm of Bliss, Moore & Co.  The liabilities of Bliss, Moore & Co. were at that time over $233,000,

all of which were paid by Samuel Bliss & Co., except the three notes so belonging to Topliff's sisters. From the time of the dissolution up to December, 1877, Samuel Bliss & Co. paid all the interest upon said notes. Bliss and Topliff went into bankruptcy in January, 1878, and the firm of Samuel Bliss & Co. entered into a composition with the firm's creditors, (but not with their individual creditors,) under the United States bankrupt law, and among others who compounded their claims with the firm were the holders of these three notes, the three sisters of Topliff. By this composition forty-two and one-half cents on the dollar was paid upon these notes by Samuel Bliss & Co. The notes were then transferred to Thaddeus P. Stanwood for collection, and to enable him to sue upon all of them in one suit. He brought suit upon the notes in July, 1878, in the Superior Court of Cook county, against Moore, Bliss and Topliff, the makers of the notes, under the firm name of Bliss, Moore & Co. Only Moore was served with process. Judgment was obtained against Moore alone, and execution was issued, put in the hands of the sheriff, and demand made upon Moore to pay the same. Thereupon Moore filed his bill in equity to be subrogated to the mortgage so given by Topliff, and offered to pay the amount due upon the judgment upon the assignment to him of the mortgage, and also prayed that the mortgaged premises be subjected to the payment of the amount due upon the mortgage, and for general relief. Bliss, Topliff and Stanwood answered denying the right to the relief prayed for. Sarah J. Houghton, Eliza M. Stanwood and Mary M. Topliff, the sisters of William B. Topliff, who are non-residents, and brought in by publication of notice, did not answer. On final hearing, upon proofs taken, the Superior Court dismissed the bill. On appeal to the Appellate Court for the First District the decree was affirmed, and an appeal taken to this court.

Messrs. ROSENTHAL & PENCE, for the appellant:

If the creditor refuses to transfer the security he holds to the surety, upon offer to pay the judgment, then the surety may file a bill to compel the transfer, upon offering to pay the judgment, and the court will decree the payment of the judgment only in case the creditor makes the transfer. *Warner* v. *Beardsley*, 8 Wend. 200; *Clason* v. *Morris*, 10 Johns. 539; 1 Story's Eq. Jur. secs. 327, 499; *Lewis* v. *Palmer*, 28 N. Y. 275; *Keokuk* v. *Low*, 31 Iowa, 119.

The power of courts of equity is not limited to settling the rights of parties upon what has been done in the past, but it reaches forth and declares their duties and rights for the future. Courts of chancery constantly, by their decrees, prescribe the rights of parties upon the performance of some duty in the future,—as, on bills to foreclose, bills for redemption, and on bills for specific performance.

Courts of equity do not require that a legal tender of the money shall be made, or that it shall be brought into court, but all that is required in a case of mutual duties and rights is, that the complainant should offer to do equity, and to pay the money upon receiving the property or securities to which he is by law entitled, upon payment of the debt. *Webster* v. *French*, 11 Ill. 275; *Snyder* v. *Sparling*, 57 id. 488; *Barnard* v. *Cushman*, 35 id. 452; *Dwen* v. *Blake*, 44 id. 140.

A surety against whom judgment has been rendered may, without making payment himself, proceed in equity against his principal, to subject the estate of the latter to the payment of the debt. *Hale* v. *Wetmore*, 4 Ohio St. 600; *Tankersley* v. *Anderson*, 4 Dessau. 47; *Marsh* v. *Pike*, 1 Sandf. Ch. 210; *Same* v. *Same*, 10 Paige, 595; *Woolridge* v. *Norris*, L. R. 6 Eq. 410; *King* v. *Baldwin*, 17 Johns. 384; *Same* v. *Same*, 2 id. 554; *Warner* v. *Beardsley*, 8 Wend. 200; *Morton* v. *Roberts*, 4 T. B. Mon. 492; *Croughton* v. *Duvall*, 3 Call, 72; *Nisbitt* v. *Smith*, 2 Brown's Ch. 582; *Hayes* v. *Ward*, 4

Johns. Ch. 123; 2 American Leading Cases, 412; 1 Story's
Eq. Jur. secs. 327, 499.

Upon the dissolution of the co-partnership, Bliss and Top-
liff took all the partnership assets, and after deducting all
the liabilities of the firm from such assets, paid Moore for
his interest in the firm, and assumed to pay the liabilities.
Such being the case, Moore, the retiring partner, as between
the members of the old firm, became the surety, and Bliss and
Topliff became the principal debtors.    *Conwell* v. *McCowan*,
81 Ill. 285; *Kellogg* v. *Moore*, 97 id. 282.

Messrs. Rich, Noble & Stone, for the appellees:

The bill seeks three things:   First, that the value of the
property released March 23, 1873, be credited on the judg-
ment against Moore; second, that Moore be subrogated to
the rights of Stanwood in the unreleased Topliff mortgage;
third, that the mortgage be foreclosed, and the proceeds be
applied upon the judgment against Moore.

As to the first, it is sufficient to say that a valuable con-
sideration was paid for the release, and the proof shows that
at the date of the release the debt was the debt of the firm,
and not of Topliff individually; that the payment was by the
firm, and therefore Moore was not affected by the release in
any way.

Moore never having been surety, as between himself and
the creditors, he can not complain of, or get any benefit from,
such release.   *James* v. *Day et al.* 37 Iowa, 165; *Moore* v.
*Stanwood*, 98 Ill. 605.

The right of a surety to be subrogated to the securities
held by a creditor is distinguished from the surety's right to
enforce payment by the debtor.

The great weight of authority in the United States is, that
a person not a surety, in relation to the creditor, must pay
before he can claim any interest in the security given the
creditor.   His duty is to pay, and he has no legal or equita-

ble right to require the creditor to stand by while he seeks indemnity for himself. *Darst* v. *Bates,* 51 Ill. 439; *Conwell* v. *McCowan,* 53 id. 363; *Same* v. *Same,* 81 id. 285; *Fogarty* v. *Ream,* 100 id. 379.

As a surety can have no right except through a creditor, and as these creditors have no longer any enforcible claim against Topliff, Moore, as surety, can have none.

Proving his whole claim in bankruptcy by the creditor, without reference to his security, is a waiver of it. *Stewart* v. *Isidore,* 1 Banker's Reg. 485; *In re Bloss,* 4 id. 147; *In re Stansell,* 6 id. 183; *In re Granger & Sabin,* 8 id. 30; *In re Jacox & Green,* id. 241.

The mortgage was then extinguished, and with it died all Moore's rights, either to compel the creditors to sue Topliff, or to foreclose the mortgage, or to maintain a suit, on his own part, to compel Topliff to pay *quia timet.*

Mr. Justice Sheldon delivered the opinion of the Court:

The vital question of fact upon which, as we conceive, the decision must turn, is, whether upon the dissolution of the firm of Bliss, Moore & Co., on January 1, 1875, and the formation of the new firm of Samuel Bliss & Co., the latter firm assumed the debts of the former firm. Upon this the parties are not agreed. Moore testifies there was such an assumption,—Bliss and Topliff testify there was not.

The question as to what the contract between Moore, Bliss and Topliff was, upon their dissolution, arose before this court on a former occasion, in the case of *Kellogg* v. *Moore,* 97 Ill. 282. The assets of Samuel Bliss & Co. had been transferred to Kellogg by the bankrupt court, and Kellogg brought suit against Moore for an accounting in regard to the affairs of Bliss, Moore & Co. Bliss and Topliff both gave testimony in that former case, and the same letters forming the basis of the dissolution were in evidence in that case as in this. We were then of opinion that the weight of

evidence showed there was a final accounting and settlement between the parties about the first of January, 1875, upon a basis which had already been agreed upon through their written correspondence, and that at that time Moore made a complete sale and transfer to Bliss and Topliff, forming the new firm of Samuel Bliss & Co., of his entire interest in the partnership effects and business of Bliss, Moore & Co., including the notes and accounts, and that under said settlement these notes now in question should have been paid by Bliss and Topliff. As respects the additional testimony which has been brought into the present case, we think it materially strengthens our former view. In the former case Moore did not testify. In the present case he does testify, and states that Bliss and Topliff agreed to assume and pay the debts of Bliss, Moore & Co. And there is the further additional evidence in the present case of the sworn admissions of Bliss and Topliff, made by them in their bankruptcy proceedings, that the notes in question should be paid by the firm of Samuel Bliss & Co., it being so expressly stated in their partnership schedule of the creditors of the firm of Samuel Bliss & Co., filed with their petition in bankruptcy, and the holders of these notes were scheduled as creditors of that firm. Bliss and Topliff also, each of them, filed with their petition their individual schedules of assets and liabilities, and names of parties to whom they owed individual debts; but in the individual schedule of William B. Topliff there is no mention of any indebtedness due by him upon said notes, except as contingent liability thereon as indorser, he stating in such schedule that the debt was the debt of Samuel Bliss & Co. These three sisters proved their notes in bankruptcy against the estate of Samuel Bliss & Co., and received their dividends out of the assets of that estate, and they also state, in their proofs then made, that Samuel Bliss & Co. had assumed and agreed to pay said notes.

Without further discussion of the testimony, we will say that the evidence in the present record not only leads us to the same conclusion we arrived at before, but it strengthens our belief in the correctness of that conclusion, that the firm. of Samuel Bliss & Co. assumed the debts of the firm of Bliss, Moore & Co. We take this, then, to be an established fact in the case. Upon that state of fact the relation of Moore, and Bliss, and Topliff, as between themselves, with respect to these notes, would be, that Bliss and Topliff became the principal debtors, and Moore but a surety.

It is a well settled principle in equity, that a surety, upon paying the debt to the principal, is entitled to be substituted in the place of the creditor as to all securities held by the latter for the debt, and to have the same benefit that he would have therein. (1 Story's Eq. Jur. sec. 327; *Warner* v. *Beardsley*, 8 Wend. 199; *Lewis* v. *Palmer*, 28 N. Y. 275; *Marsh* v. *Pike*, 1 Sandf. Ch. 210, S. C; 10 Paige, 595.) Not denying this rule, appellees' counsel insists that the right to bring a bill for subrogation does not exist until the creditor has been paid by the surety. It has been held that where a mortgage has been given as an indemnity to the surety, the mortgage could not be foreclosed and the money received by the surety until the creditor had been paid, as in *Darst* v. *Bates*, 51 Ill. 439, and *Conwell* v. *McCowan*, 53 id. 363, cited by appellees' counsel. But the question here is different, and is, whether a bill will lie to be subrogated to the security upon payment of the money to the creditor.

The right of the creditor to his money, and the right of the surety to the securities held by the creditor, are reciprocal and concurrent. In the case of such mutual rights and duties it is common for courts of chancery, by their decrees, to prescribe the rights of parties upon the performance of some duty in the future. As in case of bills for redemption, it is not required that the redemption money shall be paid before the bill can be filed, but the mortgagor offers to pay

the amount which may be found due, and the decree pro-
vides that in case of payment of such amount within a time
limited, then the mortgage shall be null and void. (*Dwen* v.
*Blake*, 44 Ill. 140.) So in case of bills for specific perform-
ance, the court does not require that the purchase money
shall be paid before a bill can be filed to enforce the execu-
tion of a deed, but all that is required is, that the complain-
ant should offer to do equity, and to pay the money upon
receiving the property to which he is by law entitled upon
payment of the debt. *Webster* v. *French*, 11 Ill. 275; *Bar-
nard* v. *Cushman*, 35 id. 452; *Snyder* v. *Spaulding*, 57 id. 488.

A surety, after the debt has become due, may, without
making payment himself, come into a court of equity and
compel the principal to pay the debt. (*Hale* v. *Wetmore*, 4
Ohio St. 600; *Tankersley* v. *Anderson*, 4 Dessau. Eq. 44;
*City of Keokuk* v. *Love*, 31 Iowa, 199.) In 2 American Lead.
Cases, 412, the rule is stated thus: "The surety stands in
the position of an equitable assignee, and may use the reme-
dies of the creditor, at his own risk and cost. He may accord-
ingly file a bill against the principal to compel him to pay the
debt at maturity, and make the creditor a party, because his
interests are at stake, and in order that he may be at hand
to receive the money."

As between themselves, here, Topliff is the principal debtor,
and Moore the surety. Judgment has been obtained by the
creditor against Moore, the surety, and its collection by exe-
cution is being proceeded with. As between themselves,
Topliff ought to pay the debt, and not Moore, it being Top-
liff's own debt. Topliff has given a mortgage on his prop-
erty to the creditor to secure the payment of the debt. Moore
asks but to have this property, which Topliff has pledged for
the payment of this debt, to be so applied. He is not seek-
ing to appropriate to himself this property without payment
of the debt, but only asks that upon payment by himself of
the debt he shall have the benefit of this mortgage security,

and in order that there may be complete relief in the same case, and because all the parties in interest are before the court, he asks that the mortgaged premises be sold, and he be indemnified out of the proceeds for the payment made to the creditors. Such relief would save circuity of action, and avoid multiplying suits. As between Topliff and Moore, the equity of the relief asked seems plain. It would be but requiring, on the part of Topliff, performance of his promise to pay the debt, and the appropriation therefor of property which he had pledged for the purpose. As respects the creditors, there could be no prejudice to any rights of theirs. It is not sought to delay them in any way, but they may proceed without hindrance in the collection of their judgment. All that is asked as respects them is, that upon payment of the judgment to them they shall transfer the mortgage security they hold. Being in chancery, where costs are, by the statute, in the discretion of the court, costs upon the creditors need not follow the decree. In order to have the full benefit of the right of subrogation, such a bill might be necessary to guard against the danger of injury from a release or transfer of the security.

The point is made by appellees' counsel that the debt for which the mortgage was given has been extinguished, so far as Bliss and Topliff are concerned, by their discharge in bankruptcy, and the mortgage with the debt, and that the creditors proving in the bankruptcy proceeding their whole claims, without reference to the mortgage security, and accepting the composition on the whole amount, was a waiver and extinguishment of the mortgage. The notes of Bliss, Moore & Co., the payment of which the mortgage of Topliff was given to secure, were the joint and several obligations of Bliss, Moore and Topliff. The bankruptcy discharge of Bliss and Topliff discharged them from their personal liability upon the notes, but did not discharge the mortgage debt. That still remained owing by Moore, and the mort-

gage, as an incident to it, continued operative, and Moore's existing equity, as surety, to have the mortgage ,security surrendered up by the creditors to him upon his payment of the debt, would be unaffected by the bankruptcy discharge.

We are of opinion the case makes an equitable title for relief, and the decree will be reversed, and the cause remanded for further proceedings conformable to this opinion.

*Decree reversed.*